# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 2:18-CV-14231-ROSENBERG/MAYNARD

ROGER SOWERBUTTS,

  Plaintiff,

v.

HORIZON GLOBAL CORPORATION and
HORIZON GLOBAL AMERICAS, INC.,

  Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

This matter is before the Court on Plaintiff Roger Sowerbutts' Motion for Entry of Default, DE 15. The Court has reviewed the Motion and the record in this case and is otherwise fully advised on the premises. For the reasons set forth below, the Court now grants the Plaintiff's Motion on the issue of liability and entitlement to damages of categories as set forth herein. The Court will set an evidentiary hearing on the question of damages in a separate order.

### I. STANDARD

Under Federal Rule of Civil Procedure 55, if a defendant fails to plead or otherwise defend a complaint filed against it, the Clerk of Court may enter a default against that party. Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant(s). Fed. R. Civ. P. 55(b). By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Although the facts are admitted as true, conclusions of law are not; a sufficient basis to state a claim must still exist in the pleadings before a court may enter a default judgment. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Allegations relating to the amount of damages are not admitted by virtue of default; rather, the Court determines the amount and character of damages to be awarded. *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citing Federal Rule of Civil Procedure 55(b)(2)). Here, Plaintiff requested a hearing and the Court finds it appropriate to hold an evidentiary hearing on the issue of quantum of damages.

## II.     FACTUAL BACKGROUND

This case arises out of the Roger Sowerbutts' ("Plaintiff") purchase, reasonable intended use, and permanent personal injuries sustained in this District from a defective product designed, manufactured, marketed, distributed, and sold by the Defendants. DE 1, ¶ 1. Plaintiff is a Florida citizen and the Defendants are Delaware corporations with their principal place of business in Michigan. *Id.* ¶ 2–3. Horizon Global Corporation (HGC) is the parent company of Horizon Global Americas, Inc. (HGA). *Id.* ¶ 3–4. HGA is a wholly-owned subsidiary of HGC and the successor-in-interest via a merger to Cequent Performance Products, Inc. *Id.* ¶ 3–4. There is no corporate distinction between the two companies, and they are referred to herein as "Defendants" or "Company". *Id.* ¶ 5–6. The Defendants are designers, manufacturers and distributors of custom-engineered towing, trailering, cargo management and related accessory products for the automotive aftermarket, retail and OE channels. *Id.* ¶ 7–14. The Company's brands include among others, "Reese," and the Company distributes this product through independent retailers such as Wal-Mart, where the Plaintiff, purchased the product in question, a "Fat Strap" Bungee cord Manufacturer Part Number: 9481200 (the "Product"), in this District. *Id.* ¶ 15–17.

Plaintiff is the President of a yacht dealer based in the Southern District of Florida. *Id.* at ¶21. In January 2016, Plaintiff purchased the Defendants' product from an authorized retailer for

use in securing cargo and other property to his vehicle(s) for transport. *Id.* ¶22. Several months later, on June 19, 2016, the Plaintiff fastened a company paddle board to the roof of his vehicle through use of the Product. *Id.* ¶ 23. Defendants' "Fat Strap" bungee came loose, slipped off the hook, unfastened and struck Plaintiff in the left eye. *Id.* ¶ 23–25. Plaintiff was also knocked to the floor. *Id.* Plaintiff sustained permanent severe injuries to his face and specifically to his left eye, which was left partially blind. *Id.* ¶ 23.

Plaintiff alleges, and Defendant admits by default that the strap is defectively designed and/or manufactured because it does not use enough material and/or have enough of a curve in its hook to create a proper "hooking" or "latching" mechanism. *Id.* ¶ 26. The strap is therefore unreasonably unsafe as it is too readily susceptible to sliding off and snapping back. *Id.* ¶28.

### III. DISCUSSION

1. <u>Count I: Negligence by Defendants</u>

To state a claim for negligence under Florida law, Plaintiff must allege sufficient facts to show that Defendant owed him a duty of care, that Defendant breached that duty, and that this breach caused her to suffer damages. *Tsavaris v. Pfizer, Inc.*, No. 1:15-CV-21826-KMM, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016).

Here, Plaintiff's Complaint alleges, and Defendant admits by default, that "the Defendants owed a duty of care to the Plaintiff, a consumer and end-user of their Product, to protect him from unreasonably unsafe conditions that were known or should have been known to the Defendants" when designing, manufacturing, assembling, and selling or distributing the Product at issue. DE 1, ¶ 52. The Defendants' role in placing the Product in commerce created a foreseeable zone of risk giving risk to a duty to take reasonable precautions to prevent harm. *Id.* ¶ 53.

Specifically, the defect, an ineffective hooking mechanism, caused the Product to be

susceptible to de-latching and snapping back at the consumer, and this defect existed at the time the Defendants parted with the Product. *Id.* ¶ 54. Defendants therefore breached their duties owed to Plaintiff by designing, manufacturing, marketing, distributing and selling a Product that was unreasonably unsafe because it did not use enough material to allow the hook end of the Product to safely and securely latch when used as intended. *Id.* ¶ 55. The Defendants knew or should have known about the defect in the Product as this was a foreseeable risk. *Id.* ¶ 56. And the Defendants failed to design a safe product, failed to test or adequately test the Product for defects, failed to take heed of any testing results performed, failed to inspect the Product for dangerous conditions, failed to manufacture a safe product, and failed to safely market a product by failing to warn consumers of the potential risk. *Id.* ¶ 57.

Plaintiff's use of the product was reasonable and foreseeable, as the Product is designed for the securing of property to the roof of a vehicle. *Id.* ¶ 58.

Finally, the injury to the Plaintiff was directly and proximately caused by the defective Product. *Id.* ¶ 59–60. As a result of Defendants' negligence, he suffered injuries. *Id.* As such, Plaintiff is entitled to judgment as it relates to his negligence claim. *See Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1338 (S.D. Fla. April 11, 2011); *Roberts v. Victoria's Secret Stores, LLC*, No. 18-cv-61534, 2018 U.S. Dist. LEXIS 153904, at *8–9 (S.D. Fla. Sep. 7, 2018).

2. Count II: Strict Liability against Defendants

The Supreme Court of Florida has adopted strict liability for manufacturers and sellers whose products reach a consumer in an unreasonably dangerous condition and thereafter cause injury. *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 606–07 (11th Cir. 2008) (citing *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976)).

"In order to hold a manufacturer liable on the theory of strict liability in tort, the suer

4

must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages." *See id.* (citations omitted). There are three elements to a strict liability products' claim in Florida: (1) a relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous; (3) causation between the defect and the harm suffered by the user. *Bailey*, 288 F. App'x at 606–07.

The Defendants are in the business of designing, manufacturing, distributing and/or selling the Product at issue. DE 1, ¶62. The Defendants designed, manufactured, distributed and sold (to its authorized retailer) the Product in a defective condition, which was unreasonably dangerous to consumers. *Id.* ¶ 63. The defect in the Product was present when the Product left the Defendant's possession. *Id.* ¶ 64. The Defendants manufactured the product for profit and placed it into the stream of commerce for sale to the public in this District. *Id.* ¶ 65. This Product was expected to and did reach the Plaintiff without substantial change in the condition in which Defendants sold the Product to its authorized retailer. *Id.* ¶ 66. The Defendants are strictly liable because the Plaintiff was harmed by this defective and unreasonably unsafe Product which directly, legally and proximately caused the Plaintiff's injuries. *Id.* ¶ 67.

Specifically, as stated above, the defect, an improper and dangerously ineffective hooking mechanism, caused the Product to be susceptible to de-latching and snapping back at the consumer and/or end user, and this defect existed at the time the Defendants parted with the Product. *Id.* ¶ 54. Defendants therefore breached their duties owed to the Plaintiff. *Id.* ¶ 55. The Defendants knew or should have known about the defect in the Product. *Id.* ¶ 56. And the Defendants failed to design a safe product, failed to test or adequately test the Product for defects, failed to take heed of any testing results performed, failed to inspect the Product for

dangerous conditions, failed to manufacture a safe product, and failed to safely market a product by failing to warn consumers like the Plaintiff of the inherent risks and failing to advertise the Product correctly. *Id.* ¶ 57.

As a direct and proximate result of the unsafe design to the hooking or latching mechanism – the defect that makes Product unreasonably dangerous – the Plaintiff sustained permanent injuries and other damages. DE 1, ¶ 68. And (1) because a relationship exists between the Defendants and the product; (2) because there is a defect which caused the product to be unreasonably dangerous; and (3) because there is causation between the defect and the harm suffered by the user, Plaintiff is entitled to judgment on the Count for Strict Liability. *See Bailey*, 288 F. App'x at 606–07.

3. Damages

Plaintiff acknowledges that a judgment by default may not be entered without a hearing on damages unless the amount claimed is a liquidated sum or one capable of mathematical calculation. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (citation omitted). Plaintiff submits an affidavit on his behalf contemporaneous with this filing, and attests to the damages sustained in this matter. *See* DE 15, Exhibit "B."

As a result of his injuries, Plaintiff required immediate medical treatment and was transferred to the emergency room where testing revealed elevated eye pressure and internal and external bleeding. DE 1, ¶ 30; DE 15, Exhibit "B," ¶ 10. The pain continued and the pressure remained elevated over a sustained period of time. *Id.* ¶ 31; DE 15, Exhibit "B," ¶ 11. Medical professionals advised that an operation was necessary to relieve the pressure and reduce the risk of losing the eye, and Plaintiff underwent this procedure. *Id.* ¶ 32; DE 15, Exhibit "B," ¶ 12. Plaintiff' vision was substantially impaired. *Id.* ¶ 33; DE 15, Exhibit "B," ¶ 14.

Plaintiff was subsequently referred to Bascom Palmer Eye Institute in Palm Beach,

Florida for further care. *Id.* ¶ 34; DE 15, Exhibit "B," ¶ 15. A second operation took place on October 4, 2016. *Id.* ¶ 35; DE 15, Exhibit "B", ¶ 16. After several months, Plaintiff learned that the operation would not restore his vision; he was unable to read from his affected eye and his peripheral vision, balance and perception were compromised. *Id.* ¶ 36; DE 15, Exhibit "B," ¶ 17. By 2017, he was advised that his vision would not improve and that over time, the conditions would worsen. *Id.* ¶ 37; DE 15, Exhibit "B," ¶ 18. Plaintiff continued to experience pain, irritation, and dryness. *Id.* ¶ 38; DE 15, Exhibit "B," ¶ 19. Plaintiff underwent a third operation in November 2017 to graft over the suture with layers of material including amniotic membrane. *Id.* ¶ 40; DE 15, Exhibit "B," ¶ 21. Plaintiff's doctors advised that his condition would not improve. *Id.* ¶ 41; DE 15, Exhibit "B," ¶ 22.

Since his last procedure, Plaintiff has learned that he will require special glasses, that his vision will continue to worsen, and that his pain in ongoing. *Id.* ¶ 42; DE 15, Exhibit "B," ¶23–24. Plaintiff continues to have difficulty in the sun, recurring aches, and difficulty driving and walking. *Id.* ¶ 42; DE 15, Exhibit "B," ¶ 23–24. Plaintiff's peripheral vision has been reduced by at least thirty percent. *Id.* ¶ 43; DE 15, Exhibit "B," ¶ 25. His work in the yachting industry has been affected: he is unable to drive boats or walk on or around vessels and is unable to walk in confined spaces, including areas with heavy machinery and moving parts. *Id.* ¶ 44; DE 15, Exhibit "B," ¶ 26. His personal life has also been impacted. *Id.* ¶ 45; DE 15, Exhibit "B," ¶ 27. Plaintiff's injuries limit his ability to engage in hobbies: he can no longer paint, play golf, ride a bicycle, engage in pinstripe detailing of cars (a prior hobby), and often must wear an eye patch outside. *Id.* Finally, Plaintiff's represents that his confidence and self-esteem have been comprised, which has affected his personal and professional life. *Id.* ¶ 48, DE 15, Exhibit "B," ¶ 29.

Plaintiff has sustained damages for past medical care, future medical care, life care needs,

economic losses, and for pain and suffering as a result of the injuries he sustained that were legally and proximately caused by a unreasonably defective and unreasonably and inherently dangerous Product, for which the Defendants knew or should have known was unsafe but failed to discharge their duty of care owed to the Plaintiff. *Id.* ¶ 49; DE 15, Exhibit "B," ¶ 30–33.

Because this action arises under the Court's diversity jurisdiction, Florida law applies to this matter. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010), (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The Court therefore orders a hearing on the quantum of damages in the following categories:

a. Lost Earning Capacity Past and Future[1]

b. Medical Treatment Past and Future[2]

c. Pain and Suffering[3]

d. The Loss of Capacity For The Enjoyment Of Life[4]

Accordingly, it is hereby **ORDERED AND ADJUDGED**

1. Plaintiff's Motion for Default Judgment is **GRANTED**.

2. A hearing on the issue of damages will be set in a subsequent order.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 13th day of November, 2018.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

---

[1] *See, e.g.*, W.R. Grace & Co.-Conn. V. Pyke, 661 So.2d 1301, 1304 (Fla. 3d DCA 1995).
[2] *See, e.g.*, Fla. Std. Jury Instr. (Civil) 6.2b; *Albertson's Inc. v. Brady*, 475 So.2d 986, 988 (Fla. 2d DCA 1985); *USAA Cas. Ins. Co. v. Shelton*, 932 So.2d 605, 606 (Fla. 2d DCA 2006).
[3] *See, e.g.*, *Willis v. Gami Golden Glades, LLC*, 967 So.2d 846 (Fla. 2007).
[4] *See, e.g.*, *Tampa Electric Co. v. Bazemore*, 85 Fla. 164, 179, 96 So. 297, 302 (Fla. 1923); *Florida Power & Light, Co. v. Robinson*, 68 So.2d 406, 415 (Fla. 1953). *See* Fla. Std. Jury Instr. (Civil) 501.